IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

KAPIL DOGRA, A72-487-024,

                      Petitioner,

v.

IMMIGRATION CUSTOMS ENFORCEMENT,
et al.,

                      Respondents.

**REPORT AND RECOMMENDATION**

09-CV-0065(A)(M)

---

Petitioner filed a petition under 28 U.S.C. §2241 *et. seq.*, seeking a writ of habeas corpus ordering his release from the custody of the Department of Homeland Security, United States Immigration and Customs Enforcement ("DHS") on January 20, 2009. Petition [1].[1] This case has been referred to me by Hon. Richard J. Arcara to decide all non-dispositive motions, hear and report on all dispositive motions, and otherwise supervise pretrial proceedings [6]. For the following reasons, I recommend that the petition be DENIED.

**BACKGROUND**

Petitioner is a native and citizen of India. Scott Declaration [4-2], Ex. 1, ¶ 6. He entered the United States in 1985 as a non-immigrant visitor, and was ordered removed from the United States to India on March 7, 1995 as an alien who had remained in the United States for a time longer than permitted. Id., ¶¶ 6, 8. Petitioner failed to surrender for removal. Id., ¶ 9.

---

[1]     Bracketed references are to the CM/ECF docket entries.

-1-

On February 10, 2003, petitioner was convicted of several crimes, including manslaughter, recklessly causing death; assault, recklessly causing serious injury with a weapon; and vehicular manslaughter in the second degree. Id., ¶ 10. Petitioner entered into DHS custody on May 27, 2005, after release from the custody of the New York State Department of Correctional Services. Id., ¶ 11. On November 17, 2005, DHS released petitioner from custody pursuant to an Order of Supervision. Id., ¶ 12.

On March 15, 2008, petitioner was arrested and charged with obstructing governmental administration, disorderly conduct, and obscene gestures. Id., ¶¶ 13-14. On June 5, 2008, petitioner returned to DHS custody for failing to abide by the conditions set forth in the Order of Supervision, and has remained in DHS custody pending his removal in accordance with the order of removal of March 7, 1995. Id., ¶¶ 16-17.

On July 11, 2008, DHS sent a presentation packet to the Consulate General of India in New York City to obtain a travel document for petitioner's removal to India. Id., ¶19. DHS continued to contact the Consulate regarding the status of the travel document between August 12, 2008 and September 3, 2008, and requested assistance from the DHS Headquarters Travel Document Unit ("HQTDU") on August 18, 2008. Id., ¶¶ 20-21. Petitioner's custody status was reviewed by DHS in September 2008. Id., ¶ 22. DHS determined that petitioner presented a flight risk, and provided notice that his detention would continue. Id.

On September 12, 2008, the Consulate advised DHS that a travel document could not issue until plaintiff provided necessary identification information regarding his family and addresses. Id., ¶¶ 24-26. After serving repeated "Warnings for Failure to Depart" which

instructed petitioner to assist with the effort to obtain the travel document, DHS extended petitioner's removal period. Id., ¶¶ 27-29. Petitioner now contests his continued detention.[2]

**DISCUSSION AND ANALYSIS**

Once an order of removal against an alien becomes final, the Attorney General is required to detain and remove the alien from the United States within a "removal period" of 90 days. *See* 8 U.S.C. §1231(a)(1), (2). However, the Immigration and Nationality Act ("INA") provides several ways in which an alien's detention can be lawfully extended beyond the 90-day removal period. *See* Arthur v. Gonzales, 2008 WL 4934065, *12 (W.D.N.Y. 2008) (Siragusa, J./Bianchini, M.J.).

**A.    Petitioner's Removal Period Was Lawfully Extended Under 8 U.S.C. §1231(a)(1)(C)**

Respondents argue that petitioner's claim fails because detention was lawfully extended pursuant to 8 U.S.C. §1231(a)(1)(C). I agree.

8 U.S.C. §1231(a)(1)(C) provides that when an alien fails to make a good faith application for necessary travel documents or otherwise acts to prevent removal, the removal period shall be extended beyond the initial 90 days, and the alien may remain in detention. *See* Farez-Espinoza v. Chertoff, 600 F. Supp. 2d 488, 501 (S.D.N.Y. 2009) ("Where continued detention under §1231(a)(1)(C) has been upheld, the alien subject to the removal order

---

[2]    I note that petitioner was previously detained by DHS from May 27, 2005 to November 17, 2005. Scott Declaration [4-2], Ex. 1, ¶¶ 11-12. However, I interpret this petition to pertain only to petitioner's detention beginning June 5, 2008. Id., ¶¶ 16-17; *see* Petition [1], ¶ 6 ("Petitioner was first taken into . . . custody on June 15, 2008 [*sic*].").

-3-

committed some affirmative and misleading act to thwart the removal process or expressly refused to cooperate").

Here, petitioner has consistently thwarted the attempts of DHS to effectuate his removal. On September 11, 2008, the Consulate notified DHS that petitioner had failed to provide required information regarding a previous address in India. Scott Declaration [4-2], Ex. A, p. 2. The next day, petitioner again failed to provide the necessary identification information during a telephonic interview with a representative of the Consulate; and without this information the Consulate is unable to issue the necessary travel document. Scott Declaration [4-2], Ex. 1, ¶ 24, Ex. A, p. 2. On September 12, 2008, petitioner was served with a "Warning for Failure to Depart" (Form I-229(a)), which included instructions to comply with the Consulate. Scott Declaration [4-2], Ex. 1, ¶ 25, Ex. A, p. 16. Petitioner was served with additional Warnings on October 15, 2008, November 14, 2008, December 19, 2008, January 30, 2009, and February 28, 2009, each of which instructed petitioner to comply. Scott Declaration [4-2], Ex. 1, ¶ 27. Petitioner offers no explanation for his failure to provide the necessary information.

Petitioner's reliance upon Zadvydas v. Davis, 533 U.S. 678 (2001) (*See* Petition [1], ¶ 19) is misplaced. Zadvydas concerned two aliens who could not be removed for reasons that were no fault of their own. 533 U.S. at 684-86. "The 'risk of indefinite detention that motivated the Supreme Court's statutory interpretation in Zadvydas does not exist when an alien is the cause of his own detention.'" Ricketts v. Mule, 2009 WL 102953, *6 (W.D.NY. 2009) (Schroeder, M.J.).

Since the only obstacle to petitioner's removal is "his own deliberate actions of failing to provide correct identity information and/or documentation so that travel documents can be secured" (respondents' Memorandum [5], p. 14), respondents have demonstrated a lawful statutory basis for extending the period of removal and detention. Therefore, I recommend that the petition be denied. *See* 8 C.F.R. §241.4(g)(1)(ii).

**B.     Petitioner's Continued Detention is Lawful**

Even assuming that the removal period had not been properly extended under 8 U.S.C. §1231(a)(1)(C), petitioner's claim would still be without merit. Petitioner argues that there is no significant likelihood of his removal in the reasonably foreseeable future and that his detention is therefore unlawful under Zadvydas, supra, 533 U.S. at 701. Petition [1], ¶¶ 19-21. Respondents counter that petitioner has failed to meet his burden on this point. Respondent's Memorandum [5], pp. 13-14.

After the 90-day removal period has expired "the Government 'may' continue to detain an alien who still remains here or release that alien under supervision." Zadvydas, supra, 533 U.S. at 683 (quoting 8 U.S.C. §1231(a)(6)). Under Zadvydas, the first six months of

detention following a final removal order[3] are presumptively permissible. 533 U.S. at 701. Once the six-month period has passed, the burden is on the alien to "provide[ ] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future . . . ." Id. Only then does the burden shift to the government, which "must respond with evidence sufficient to rebut that showing". Id.

I find that petitioner has failed in his initial burden. Petitioner appears to argue that his continued detention is unlawful under Zadvydas because the six month presumptive period of permissible detention has lapsed. Petition [1], ¶ 19. However, "this 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." Zadvydas, supra, 533 U.S. at 701. Petitioner must still "provide[ ] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future . . . ." Id.

Petitioner also appears to argue that the Consulate is unable to issue the necessary travel documents. Petition [1], ¶ 20 ( "The India Consulate has no Knowledge in issue of travel

---

[3] There is conflicting authority on whether the six month period of presumptive permissibility accrues upon the final removal order or following the ninety day removal period. *Compare* Wang v. Ashcroft, 320 F. 3d 130, 145-46 (2d Cir. 2003) (interpreting the Zadvydas six-month limit to accrue upon the final removal order); Kassama, supra, 553 F. Supp. 2d at 305 (same); Arthur v. Gonzales, 2008 WL 4934065, *13 (W.D.N.Y. 2008) (Siragusa, J.) ("The Zavydas [*sic*] six-month period includes the initial 90-day removal period, plus another 90 of days [*sic*] of additional time . . . ."), *with* Gordon v. Herron, 2009 WL 909640, *4 (W.D.N.Y. 2009) (Skretny, J.) ("Under Zadvydas, the government can hold him only for up to six months as a presumptively reasonable period of detention following the initial ninety-day removal period."); Gabriel v. Immigration and Customs Enforcement, 2009 WL 1272291, *2 (W.D.N.Y. 2009) (Bianchini, M.J.) ("Zadvydas recognized six months as a 'presumptively reasonable' period of time following the end of the 90-day removal period . . . ."). Despite these conflicting authorities, I am bound to follow the Second Circuit's decision in Wang. In any event, petitioner has been detained beyond either six or nine months. *See* Petition [1].

Documents"). However, even assuming that this satisfies petitioner's initial burden to demonstrate good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, respondents have rebutted any doubts as to the likelihood of removal in the reasonably foreseeable future. As previously discussed, respondents state that the only obstacle to petitioner's removal is his failure to cooperate with DHS and the Consulate in obtaining the necessary travel documents for his removal. Respondent's Memorandum [5], p. 14; Scott Declaration [4-2], ¶32. According to respondents, there is no indication that removal will not be effectuated within a reasonable time once petitioner complies with his statutory obligations. Id., ¶33.

Furthermore, respondents state that there are no institutional barriers to petitioner's removal, and that DHS has successfully repatriated many aliens to India in recent years. Id., ¶31. See Kassama, supra, 553 F. Supp.2d at 306 (denying petition for a writ of habeas corpus where "1) Petitioner has been in custody awaiting deportation for approximately 21 months; 2) during that time ICE has contacted the Gambian Embassy numerous times to request the issuance of travel documents for Petitioner; and 3) the Gambian Embassy has indicated that it is investigating the request.").

"'For detention to remain reasonable, as the period of prior post removal confinement grows, what counts as the reasonably foreseeable future conversely would have to shrink.'" Kassama v. Department of Homeland Security, 553 F. Supp. 2d 301, 307 n. 4 (W.D.N.Y. 2008) (Siragusa, J.) (quoting Zadvydas, supra, 533 U.S. at 701). However, having been detained for over one year, "'that period is shrinking here.'" Id. Therefore, if it

subsequently appears that petitioner's removal is not reasonably foreseeable because of his continued detention or for any other reason, he may file another petition. *See* id.

## CONCLUSION

For these reasons, I recommend that the petition be DENIED and this action be dismissed, without prejudice to petitioner's right to file another petition if it subsequently appears that petitioner's removal is no longer reasonably foreseeable. Pursuant to 28 U.S.C. §636(b)(1), it is hereby

ORDERED, that this Report and Recommendation be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed. R. Civ. P. 72(b) and Local Rule 72.3(a)(3).

The district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but was not presented to the magistrate judge in the first instance. *See*, *e.g.*, Patterson-Leitch Co. v. Massachusetts Mun. Wholesale Electric Co., 840 F. 2d 985 (1st Cir. 1988).

Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order. Thomas v. Arn, 474 U.S. 140 (1985); Wesolek v. Canadair Ltd., 838 F. 2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Report and Recommendation), may result in the District Judge's refusal to consider the objection.

**SO ORDERED**.

DATED: August 10, 2009

      /s/ Jeremiah J. McCarthy
      JEREMIAH J. MCCARTHY
      United States Magistrate Judge